## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD ROSENBAUM, an individual,

      Plaintiff.

v.

TOYOTA MOTOR SALES, USA, INC., a
California corporation,

      Defendant.

Case No. 2:16-cv-12645-BAF-RSW
Hon. Bernard A. Friedman
Magistrate Judge R. Steven Whalen

Date: _____
Time: _____
Place: _____

**ORAL ARGUMENT
REQUESTED**

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") moves this Court to dismiss Plaintiff Richard Rosenbaum's Amended Class Action Complaint against it as a matter of law, and as to the claim asserted under the Michigan Consumer Protection Act ("MCPA") with prejudice and without leave to amend.

On August 19, 2016, counsel for TMS proposed several dates and times for a telephone call with Plaintiff's counsel to ascertain whether this Motion would be opposed by Plaintiff or to obtain Plaintiff's concurrence in the relief sought as required under Local Rule 7.1. Plaintiff's counsel did not agree to speak on any of

the dates and times proposed, and indicated Plaintiff's non-concurrence with this

Motion.  *See* E.D. Mich. LR 7.1(a).

WHEREFORE, for the reasons stated in the attached brief in support of this

Motion, incorporated herein by reference, TMS respectfully requests that the Court

dismiss Plaintiff's Amended Class Action Complaint, and as to the claim asserted

under the MCPA with prejudice and without leave for Plaintiff to amend.

Dated: August 24, 2016                          Respectfully submitted,

MILLER CANFIELD                          SIDLEY AUSTIN LLP

s/ Leigh M. Schultz                          s/ Darlene M. Cho
Leigh M. Schultz (P71038)                Michael L. Mallow (admission pending)
Brian M. Schwartz (P69018)               Darlene M. Cho (251167)
150 West Jefferson, Suite 2500           555 West Fifth Street, Suite 4000
Detroit, Michigan 48226                  Los Angeles, CA 90013
(313) 963-6420                           (213) 896-6000
schultzl@millercanfield.com              mmallow@sidley.com;
schwartzb@millercanfield.com             dcho@sidley.com


*Attorneys for Defendant Toyota Motor Sales, USA, Inc.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RICHARD ROSENBAUM, an individual,

          Plaintiff.

v.

TOYOTA MOTOR SALES, USA, INC., a
California corporation,

          Defendant.

_____

Case No. 2:16-cv-12645-BAF-RSW
Hon. Bernard A. Friedman
Magistrate Judge R. Steven Whalen

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

217029845

# TABLE OF CONTENTS

**Page**

TABLE OF ABBREVIATIONS ...............................................................ix

STATEMENT OF ISSUES PRESENTED...................................................x

STATEMENT OF MOST APPROPRIATE AUTHORITY ...................................xi

INTRODUCTION ...............................................................................1

PLAINTIFF'S FACTUAL ALLEGATIONS...................................................2

ARGUMENT ....................................................................................4

I.    LEGAL STANDARD ON MOTION TO DISMISS FOR FAILURE
      TO STATE A CLAIM..................................................................4

II.   PLAINTIFF'S MCPA CLAIM FAILS TO MEET THE PLEADING
      REQUIREMENTS OF RULES 8(a) AND 9(b)......................................5

III.  PLAINTIFF'S MCPA CLAIM IS BARRED PURSUANT TO THE
      EXEMPTION PROVISION ...........................................................8

      A.   Federal Regulatory Scheme Specifically Authorizing Fuel
           Economy Advertising..........................................................10

      B.   The Federal Regulatory Scheme Exempts From the MCPA the
           General Transaction or Conduct of Advertising Electric Driving
           Range ............................................................................13

IV.   PLAINTIFF'S CLAIM FOR BREACH OF EXPRESS WARRANTY
      UNDER THE MICHIGAN UNIFORM COMMERCIAL CODE
      FAILS ...................................................................................17

      A.   Plaintiff Has Failed to Allege Sufficient Facts Supporting the
           Breach of An Express Warranty.............................................17

      B.   Plaintiff's Express Warranty Claim Also Fails for Lack of
           Privity ...........................................................................19

217029845

V.    PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED
      WARRANTY OF MERCHANTABILITY UNDER THE
      MICHIGAN UNIFORM COMMERCIAL CODE FAILS ...........................21

VI.   PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FAILS...............23

CONCLUSION .......................................................................................25

iii

217029845

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................4

*Attorney General v Diamond Mortgage Co.*,
   414 Mich. 603, 327 N.W.2d 805 (1982)...........................................9

*Autzen v. John C. Taylor Lumber Sales, Inc.*,
   280 Or. 783, 572 P.2d 1322 (Or. 1977)...........................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................4

*Brett v. Toyota Motor Sales, U.S.A., Inc.*,
   No. 08-1168, 2008 U.S. Dist. LEXIS 114462 (M.D. Fla. Sept. 15,
   2008) ...................................................................................................16

*In re Brown*,
   342 F.3d 620 (6th Cir. 2003) ...........................................................23

*Coffey v. Foamex L.P.*,
   2 F.3d 157 (6th Cir. 1993) .................................................................6

*Computer Network, Inc. v. AM Gen. Corp.*,
   265 Mich. App. 309, 696 N.W.2d 49 (2005)...................................21

*Cooper v. Countrywide Home Loans, Inc.*,
   No. 14-cv-14137, 2015 U.S. Dist. LEXIS 45131 (E.D. Mich. Apr.
   7, 2015) ...............................................................................................5

*Flanagan v. Altria Group, Inc.*,
   No. 05-71697, 2005 U.S. Dist. LEXIS 24644 (E.D. Mich. Oct. 25,
   2005) ...........................................................................................*passim*

*Foman v. Davis*,
   371 U.S. 178 (1962)...........................................................................17

iv

*Godfrey v. Toyota Motor North America, Inc.*,
  No. 07-5132, 2008 U.S. Dist. LEXIS 51762 (W.D. Ark. June 11,
  2008) ................................................................................................................16

*Guaranteed Constr. Co. v. Gold Bond Products*,
  153 Mich. App. 385, 395 N.W.2d 332 (1986)...................................................22

*Harnden v. Ford Motor Co.*,
  No. 04-72036, 2006 U.S. Dist. LEXIS 17942 (E.D. Mich. Apr. 10,
  2006) ................................................................................................................23

*Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*,
  284 Mich. App. 617, 774 N.W.2d 332 (2009)............................................17, 20

*Herremans v. BMW of N. Am., LLC*,
  No. CV 14-02363, 2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct.
  3, 2014) ............................................................................................................24

*Home Owners Ins. Co. v. ADT LLC*,
  109 F. Supp. 3d 1000 (E.D. Mich. 2015) ...........................................................6

*Keiper, LLC v. Intier Auto. Inc.*,
  467 Fed. Appx. 452 (6th Cir. 2012)...................................................................23

*Kinder v. Meredith Corp.*,
  No. 14-cv-11284, 2014 U.S. Dist. LEXIS 118613 (E.D. Mich.
  Aug. 26, 2014) ..................................................................................................25

*Kyles v. Keefe Commissary Network, LLC*,
  No. 14-cv-11907, 2015 U.S. Dist. LEXIS 49152 (E.D. Mich. Mar.
  24, 2015) ..........................................................................................................14

*Lipov v. Louisiana-Pacific Corp.*,
  No. 1:12-cv-439, 2013 U.S. Dist. LEXIS 101759 (W.D. Mich. July
  22, 2013) ............................................................................................................8

*Liss v. Lewiston-Richards, Inc.*,
  478 Mich. 203, 732 N.W.2d 514 (2007)..............................................................8

*Mezibov v. Allen*,
  411 F.3d 712 (6th Cir. 2005) ..............................................................................4

v

*Mich. Dessert Corp. v. A.E. Staley Mfg. Co.*,
   23 Fed. Appx. 330 (6th Cir. 2001)......................................................19

*Montgomery v. Kraft Foods Global, Inc.*,
   822 F.3d 304 (6th Cir. 2016) ...........................................................20

*Morse v. McWhorter*,
   290 F.3d 795 (6th Cir. 2002) ...........................................................17

*In re OnStar Contract Litig.*,
   600 F. Supp. 2d 861 (E.D. Mich. 2009) .............................................5

*Pettey v. CitiMortgage, Inc.*,
   No. 11-13779, 2012 U.S. Dist. LEXIS 117932 (E.D. Mich. Aug.
   21, 2012) ..........................................................................................5

*Price Bros. Co. v. Philadelphia Gear Corp.*,
   649 F.2d 416 (6th Cir. 1981) ...........................................................19

*Reece v. Yeager Ford Sales, Inc.*,
   184 S.E.2d 727 (W. Va. 1971).........................................................24

*Rosipko v. FCA US, LLC*,
   No. 15-11030, 2015 U.S. Dist. LEXIS 163455 (E.D. Mich. Dec. 7,
   2015) ..............................................................................................6, 7

*Shaffer v. AMF, Inc.*,
   842 F.2d 893 (6th Cir. 1988) ...........................................................18

*Short v. Janssen Pharm., Inc.*,
   No. 1:14-cv-1025, 2015 U.S. Dist. LEXIS 61123 (W.D. Mich.
   May 11, 2015)..................................................................................13

*Smith v. Globe Life Ins. Co.*,
   460 Mich. 446, 597 N.W.2d 28 (1999)............................................8, 9

*Storey v. Attends Healthcare Prods.*,
   No. 15-CV-13577, 2016 U.S. Dist. LEXIS 72505 (E.D. Mich. June
   3, 2016) .....................................................................................6, 21, 22

*Thomas v. Leja*,
   187 Mich. App. 418, 468 N.W.2d 58 (1991)....................................24

217029845

*Treadaway v. Damon Corp.*,
No. 03-CV-72650, 2004 U.S. Dist. LEXIS 28762 (E.D. Mich.
Sept. 30, 2004) ................................................................................................23

*Troup v. Toyota Motor Corp.*,
545 Fed. Appx. 668 (9th Cir. 2013)................................................................23

*Williams v. Scottrade, Inc.*,
No. 06-10677, 2006 U.S. Dist. LEXIS 50306 (E.D. Mich. July 24,
2006) .................................................................................................................7

## Statutes

15 U.S.C. § 1232 ....................................................................................................10

49 U.S.C. § 32908(b)(1) & (2)...............................................................................10

Ark. Code Ann. § 4-88-101(1) ...............................................................................16

Ark. Code Ann. § 4-88-101(3) ...............................................................................16

Fla. Stat. § 501.212(1)............................................................................................16

MCL 440.2313(1)(a) & (b) .....................................................................................18

MCL 440.2314 ........................................................................................................21

MCL 440.2314(1) ...................................................................................................21

MCL 440.2314(2) ...................................................................................................21

MCL 445.903(1) .......................................................................................................5

MCL 445.903(1)(a)-(*ll*).........................................................................................5

MCL 445.904(1)(a) ........................................................................................*passim*

MCL 445.911(3) ........................................................................................................5

## Other Authorities

16 C.F.R. Pt. 17......................................................................................................11

16 C.F.R. Pt. 259....................................................................................................11

217029845

16 C.F.R. § 259.2(a)(1)-(2) ........................................................................11

40 C.F.R. § 600.308-12(b)(4) ....................................................................10

71 Fed. Reg. 77,872 (Dec. 27, 2006) .......................................................10

76 Fed. Reg. 39,478 (July 6, 2011) ..........................................................15

81 Fed. Reg. 36,216 (June 6, 2016) .............................................11, 12, 13

Fed. R. Civ. Proc. 8(a) ...............................................................................5

Fed. R. Civ. Proc. 9(b) ........................................................................5, 6, 7

217029845

## <u>TABLE OF ABBREVIATIONS</u>

| | |
|---|---|
| ADTPA | Arkansas Deceptive Trade Practices Act |
| Am. Compl. | Amended Complaint (ECF No. 6) |
| Ex. | Exhibit |
| FTC | Federal Trade Commission |
| FTC Guide | Guide Concerning Fuel Economy Advertising for New Automobiles, 16 C.F.R. Pt. 259 |
| MCPA | Michigan Consumer Protection Act |
| mpg | miles-per-gallon |
| Plaintiff | Plaintiff Richard Rosenbaum |
| RISC | Retail Installment Sale Contract |
| TMS | Toyota Motor Sales, U.S.A., Inc. |

217029845

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.  Should the Court dismiss Plaintiff's claim against Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") for violation of the Michigan Consumer Protection Act ("MCPA") because Plaintiff has failed to allege sufficient facts in the Amended Complaint ("Am. Compl.") to satisfy the pleading requirements under Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure?

    TMS asserts the answer is "yes."

II. Putting aside the question of whether Plaintiff has alleged sufficient facts to state a viable MCPA claim, should the Court dismiss Plaintiff's MCPA claim without leave to amend because the general transaction alleged in the Am. Compl. is exempt pursuant to MCL 445.904(1)(a)?

    TMS asserts the answer is "yes."

III. Should the Court dismiss Plaintiff's claim for breach of express warranty against TMS because Plaintiff has failed to allege sufficient facts to state a viable claim under Michigan law?

    TMS asserts the answer is "yes."

IV. Should the Court dismiss Plaintiff's claim for breach of express warranty against TMS for lack of privity?

    TMS asserts the answer is "yes."

V.  Should the Court dismiss Plaintiff's claim for breach of the implied warranty of merchantability against TMS because Plaintiff has failed to allege sufficient facts to state a viable claim under Michigan law?

    TMS asserts the answer is "yes."

VI. Should the Court dismiss Plaintiff's claim for breach of contract against TMS because Plaintiff has failed to allege sufficient facts to state a viable claim under Michigan law?

    TMS asserts the answer is "yes."

## <u>STATEMENT OF MOST APPROPRIATE AUTHORITY</u>

*Attorney General v Diamond Mortgage Co.*, 414 Mich. 603, 327 N.W.2d 805 (1982)

*Flanagan v. Altria Group, Inc.*, No. 05-71697, 2005 U.S. Dist. LEXIS 24644 (E.D. Mich. Oct. 25, 2005)

*Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 284 Mich. App. 617, 774 N.W.2d 332 (2009)

*Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 732 N.W.2d 514 (2007)

*Montgomery v. Kraft Foods Global, Inc.*, 822 F.3d 304, 309 (6th Cir. 2016)

*Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28 (1999)

*Storey v. Attends Healthcare Prods.*, No. 15-CV-13577, 2016 U.S. Dist. LEXIS 72505 (E.D. Mich. June 3, 2016)

217029845

## **INTRODUCTION**

Ignoring the federally-mandated Monroney label affixed to his vehicle at the time of purchase that expressly stated Plaintiff's 2012 Prius Plug-In vehicle had an EPA-estimated combined electric and hybrid range of 11 miles and an all-electric range of 6 miles, and ignoring clear and express disclaimers on the Monroney label qualifying the fuel economy representations,[1] Plaintiff brought this lawsuit because he allegedly only attained an "all electric" driving range of 8 miles through May of 2015, and then 10 miles, in all electric mode thereafter.

In this putative nationwide class action for allegedly false advertising and marketing, Plaintiff sued Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") for: (1) Breach of Contract, (2) Breach of Express and Implied Warranties under Michigan law; and (3) for violation of the Michigan Consumer Protection Act ("MCPA").  None of the claims are viable.

First, Plaintiff's MCPA claim is deficiently pled and fails to give TMS fair and adequate notice of the conduct charge.  Moreover, the MCPA claim is barred as a matter of law pursuant to the exemption provision in MCL 445.904(1)(a) because the Federal Trade Commission ("FTC") has "specifically authorized" the

---

[1] The "Monroney label" is the federally mandated window sticker that sets forth, *inter alia*, EPA-estimated fuel economy, including electric driving ranges where applicable.

general transaction or conduct of advertising EPA estimated fuel economy including driving range information.

Second, Plaintiff's claims for breach of express and implied warranties under Michigan law fail on multiple grounds. Plaintiff's claim for breach of express warranty is not viable because Plaintiff fails to adequately allege either the existence or breach of an express warranty. Moreover, the claim fails as a matter of law for lack of privity. Plaintiff's implied warranty of merchantability claim fails because Plaintiff fails to allege any facts to support an inference that his Prius Plug-In is unfit for the ordinary purposes of providing transportation.

Third, Plaintiff's breach of contract claim fails simply because Plaintiff has not alleged any contract with TMS and the sales contract he did attach to the original complaint cannot support a breach of contract claim against TMS who was not a party to the sales contract.

Accordingly, TMS requests that Plaintiff's claims be dismissed and that the MCPA claim be dismissed with prejudice because no amendment could overcome the exemption provision set forth in MCL 445.904(1)(a).

## PLAINTIFF'S FACTUAL ALLEGATIONS

On or about 2012, Plaintiff Richard Rosenbaum ("Plaintiff") purchased a 2012 Toyota Prius Plug-In vehicle from Page Toyota, an authorized, independent Toyota dealer. Amended Complaint (ECF No. 6) ("Am. Compl.") ¶ 12. Although

217029845

Plaintiff does not allege where or when he saw any representation from TMS regarding the electric driving range of the 2012 Plug-In, or what the content of the representations were, Plaintiff asserts that TMS engaged in "false advertisement and [made] false representations that the Toyota Prius Plug-In can operate in a fully electric mode for up to thirteen (13) miles on a full charge." *Id.* ¶ 2.[2]  Later in his complaint, Plaintiff inconsistently alleges that TMS "represented that the fully electric range was *at minimum* thirteen (13) miles."  *Id.* ¶ 14 (emphasis added).

Since May of 2015, Plaintiff's Plug-In vehicle has been able to travel approximately 10 miles in all-electric mode. *See id.* ¶ 16. Plaintiff claims that prior to May of 2015, he experienced an electric driving range of "an estimated 8.0 to 8.2 miles in the summer months only."  *Id.* ¶ 15. According to Plaintiff, when the outside temperature is lower than fifty-five (55) degrees Fahrenheit, the Plug-In "will not operate in electric mode at all," presumably because the engine needs to turn on to heat the car.  *Id.* ¶ 17.  Plaintiff asserts that TMS should have disclosed, but did not disclose, some unspecified "limitation" in the Plug-In vehicle based on "the outdoor temperature and the vehicles [sic] ability to operate in certain climates," presumably a Michigan climate. *See id.* ¶ 14.

---

[2] Although Plaintiff claims that TMS "continues to" violate certain laws, *see* Am. Compl. ¶ 3, Plaintiff alleges no facts to support the assertion that TMS continues to market the 2012 model year Prius Plug-In.

On these facts, Plaintiff sued TMS for breach of contract, breach of express and implied warranties under Michigan law, and for violation of the MCPA.  As discussed herein, none of Plaintiff's claims are viable.

## ARGUMENT

## I.   LEGAL STANDARD ON MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss in federal court, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some *viable* legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (emphasis added).

## II.   PLAINTIFF'S MCPA CLAIM FAILS TO MEET THE PLEADING REQUIREMENTS OF RULES 8(a) AND 9(b)

The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MCL 445.903(1).[3]  The MCPA enumerates 38 prohibited methods, acts or practices in the conduct of trade or commerce.  *See* MCL 445.903(1)(a)-(*ll*).  However, Plaintiff fails to specify which of the 38 enumerated methods, acts or practices he claims TMS has violated. *See* Am. Compl. ¶¶ 46-51. This pleading failure alone requires the dismissal of the MCPA claim.  *See Cooper v. Countrywide Home Loans, Inc.*, No. 14-cv-14137, 2015 U.S. Dist. LEXIS 45131, at *13 (E.D. Mich. Apr. 7, 2015) (dismissing claim under the MCPA where plaintiff failed to specify which provision of the MCPA was allegedly violated); *Pettey v. CitiMortgage, Inc.*, No. 11-13779, 2012 U.S. Dist. LEXIS 117932, at *33-34 (E.D. Mich. Aug. 21, 2012) ("Even if the Act applies to the defendant, the plaintiffs' complaint has neither identified the provisions of § 445.903 that they believe have been breached nor provided a plausible set of allegations from which the Court could assess their entitlement to

---

[3] Under the Michigan Consumer Protection Act ("MCPA"), "[a] person who suffers loss as a result of a violation of this act may bring a class action ***on behalf of persons residing or injured in this state*** for . . . actual damages[.]" MCL 445.911(3) (emphasis added); *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 866 (E.D. Mich. 2009) (the MCPA "by its express terms, limits such a class to persons residing or injured in Michigan").  Thus, insofar as Plaintiff purports to represent a putative nationwide class, the MCPA can not apply to any individuals who do not reside and were not injured in Michigan.

5

relief."); *see also Storey v. Attends Healthcare Prods.*, No. 15-CV-13577, 2016

U.S. Dist. LEXIS 72505, at \*25-31 & n. 10-11 (E.D. Mich. June 3, 2016)

(dismissing "theoretical" claims under MCPA where the plaintiff failed to allege

supporting facts).

In addition, the MCPA claim fails because Plaintiff has failed to plead the

claim with the level of specificity required under Rule 9(b) of the Federal Rules of

Civil Procedure.  *Rosipko v. FCA US, LLC*, No. 15-11030, 2015 U.S. Dist. LEXIS

163455, at \*8-13 (E.D. Mich. Dec. 7, 2015) (holding that Rule 9(b) applied to

MCPA claim); *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1008-

1009 (E.D. Mich. 2015) (dismissing MCPA claim for failing to meeting the

heightened requirement of Rule 9(b) and because the plaintiff had not identified

which section of the MCPA defendants allegedly violated). "The Sixth Circuit

reads Rule 9(b) liberally, requiring a plaintiff, at a minimum, to 'allege the time,

place, and content of the alleged misrepresentation on which he or she relied; the

fraudulent scheme; the fraudulent intent; and the injury resulting from the fraud.'"

*Home Owners Ins. Co.*, 109 F. Supp. 3d at 1008 (quoting *Coffey v. Foamex L.P.*, 2

F.3d 157, 161-62 (6th Cir. 1993)).

Here, Plaintiff's complaint fails to sufficiently allege the *content* of the

offending marketing material he claims violated the MCPA. For example, Plaintiff

vaguely asserts that TMS represented that the 2012 Toyota Prius Plug-In "*can*

operate in a fully electric mode for *up to* thirteen (13) miles on a full charge," *see, e.g.*, Am. Compl. ¶ 2 (emphases added) and that TMS "specifically represented that the fully electric range was *at minimum* thirteen (13) miles," *id.* ¶ 14 (emphasis added).  However, the former alleged representation does not appear to be actionable at all as it does not unequivocally state or promise that the 2012 Prius Plug-In will always achieve a range of 13 miles in the fully electric mode. Given the inconsistency in allegations, in the absence of more specific information as to what statement Plaintiff claims to have relied upon in making his purchasing decision, when he was exposed to the statement and where, this Court cannot evaluate whether Plaintiff has stated an actionable representation on the facts as currently pled.  *See Rosipko*, 2015 U.S. Dist. LEXIS 163455, at *8-9 (an element of fraud under the MCPA is to show that the defendant made the statement "as a positive assertion"); *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 U.S. Dist. LEXIS 50306, at *21 (E.D. Mich. July 24, 2006) ("Without knowing more specifically the statements on which Williams allegedly relied, Scottrade and this Court cannot evaluate whether they are actionable representations or whether they constitute mere puffery.")

In sum, Plaintiff's MCPA claim must be dismissed because Plaintiff's allegations do not satisfy the heightened pleading requirements of Rule 9(b). *See Rosipko*, 2015 U.S. Dist. LEXIS 163455, at *9-10 (dismissing MCPA claim where

7

amended complaint was devoid of any averments as to: "(a) when or where any purported affirmative representations were made, (b) the precise content of what was represented, (c) who specifically made the representation(s), (d) the means by which such representation(s) were conveyed, or (e) when, where, or how Plaintiffs ever heard or saw any purported representation"); *Lipov v. Louisiana-Pacific Corp.*, No. 1:12-cv-439, 2013 U.S. Dist. LEXIS 101759, at *9-10 (W.D. Mich. July 22, 2013) (dismissing MCPA claim where the plaintiff failed to plead "(a) what statements were made to him, (b) the time and place of each purported statement, (c) the manner in which the statements misled him, and (d) how he detrimentally relied on the statements, or that Defendant sold TrimBoard directly to Plaintiff").

## III.  PLAINTIFF'S MCPA CLAIM IS BARRED PURSUANT TO THE EXEMPTION PROVISION

The MCPA "does not apply" to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  MCL 445.904(1)(a).  The relevant inquiry in determining whether the exemption provision applies is "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 732 N.W.2d 514, 519 (2007) (quoting *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 597 N.W.2d 28, 38 (1999), *superseded on other grounds by*

8

*statute*); *Attorney General v Diamond Mortgage Co.*, 414 Mich. 603, 617, 327 N.W.2d 805 (1982) (while "no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption [under § 445.904] will nevertheless apply where a party seeks to attach such labels to '[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States'"); *Flanagan v. Altria Group, Inc.*, No. 05-71697, 2005 U.S. Dist. LEXIS 24644, at *6 (E.D. Mich. Oct. 25, 2005) (in analyzing exemption provision under the MCPA, a court determines whether the defendant's "general transaction [was] specifically authorized by law . . . " "without regard to legality") (citing *Smith*, 597 N.W.2d at 38).

Here, the general transaction or conduct upon which Plaintiff's claims are based is TMS' alleged (albeit unspecified) "advertising and marketing" of the electric range of 2012 Toyota Prius Plug-In vehicles. *See* Am. Compl. ¶ 32.  As discussed below, the MCPA claim is barred as a matter of law because the general transaction or conduct of advertising and marketing fuel economy information and electric driving range, regardless of the legality of the unspecified advertising alleged by Plaintiff, is "specifically authorized" by the FTC within the meaning of the exemption provision of MCL 445.904(1)(a).

9

### A.   Federal Regulatory Scheme Specifically Authorizing Fuel Economy Advertising

All new vehicles sold in the United States are required by federal law to have a window sticker (commonly referred to as the "Monroney label") containing certain information regarding fuel economy. *See* 49 U.S.C. § 32908(b)(1) & (2); *see also* 15 U.S.C. § 1232.  In the case of a plug-in hybrid vehicle, electric range must be specified.  *See* 40 C.F.R. § 600.308-12(b)(4). Below is an example of the information required on a Monroney label for a plug-in hybrid vehicle as of 2012:



The purpose of providing these estimates -- calculated the same way on every car -- is so that consumers can compare the relative estimated fuel economy of new vehicles when making a purchasing decision.  *See* 71 Fed. Reg. 77,872, 77,874

217029845

(Dec. 27, 2006) ("The EPA estimates are meant to be a general guideline for consumers, particularly to compare the relative fuel economy of one vehicle to another.")  Thus, the EPA's fuel economy estimates provide an "apples to apples" comparison by which consumers can meaningfully evaluate the relative fuel economy of vehicles tested under the same controlled conditions.

In 1975, the FTC issued a Guide Concerning Fuel Economy Advertising for New Automobiles (the "FTC Guide"). *See* 16 C.F.R. Pt. 259; 40 Fed. Reg. 42,003 (Sept. 10, 1975) (codified at 16 C.F.R. Pt. 259).[4]  A key purpose of the FTC Guide is "to prevent deceptive fuel economy advertising for new automobiles and thus facilitate ***the <u>use</u> of fuel efficiency information <u>in</u> <u>advertising</u>***."  81 Fed. Reg. 36,216 (June 6, 2016) (emphasis added).  The FTC Guide authorizes a manufacturer or dealer to advertise fuel economy so long as, at a minimum, the advertising discloses established EPA fuel economy estimates and that the EPA is the source of the EPA fuel economy estimates.  *See* 16 C.F.R. § 259.2(a)(1)-(2). The FTC Guide also authorizes a manufacturer or dealer to advertise fuel economy estimates derived from a non-EPA test, but only if the advertisement also discloses EPA fuel economy estimates and gives the EPA estimates "substantially more

---

[4] The FTC's "[i]ndustry guides are administrative interpretations of laws administered by the Commission for the guidance of the public in conducting its affairs in conformity with legal requirements." 16 C.F.R. Pt. 17. "Failure to comply with the guides may result in corrective action by the [FTC] under applicable statutory provisions."  *Id.*

prominence than any other estimate," the source of the non-EPA test, and certain additional disclosures about the non-EPA test.  *Id.* § 259.2(c).

In June 6, 2016, the FTC issued a Request for Public Comments regarding proposed amendments to the FTC Guide.  81 Fed. Reg. 36,216 (June 6, 2016). With the advent of new advanced technology and to harmonize the FTC Guide with current EPA federal fuel economy labeling laws and regulations, among the proposed amendments under consideration by the FTC is guidance on fuel economy advertising regarding electric driving range. *See* 81 Fed. Reg. at 36,224. The FTC acknowledges that "range estimates for electric vehicles provide a fundamental measurement of an electric vehicle's performance based on EPA testing requirements."  *Id.* As with general fuel economy miles-per-gallon ("mpg") claims that do not reference specific mpg numbers, the FTC believes that general driving range claims (*e.g.*, "will go far on a single charge") have the potential to deceive consumers.  *Id.*[5] The FTC believes that "[d]isclosing the EPA range

---

[5] To the extent Plaintiff is alleging that TMS violated the MCPA because it "ma[de] no mention of the limitation regarding the outdoor temperature and the vehicles [sic] ability to operate in certain climates," *see* Am. Compl. ¶ 14, the FTC has already expressed the view that such representations are likely to be *deceptive*. *See* 81 Fed. Reg. at 36,288 ("*Example 2:* An advertisement states: ''The XZY electric car has a driving range of 110 miles per charge in summer conditions according to our expert's test.'' It provides no additional information regarding this driving range claim. This advertisement likely conveys that this 110 driving range figure is comparable to an EPA driving range estimate for the vehicle. The advertisement is likely deceptive because it does not clearly state that the test is a non-EPA test; it does not provide the EPA estimated driving range; and it does not

12

estimates will help prevent deception by providing clear, objective information that allows consumers to compare the driving ranges of competing vehicles." *Id.* Accordingly, "the proposed [amendments to the FTC] Guide advises advertisers to disclose EPA-mandated driving range results whenever they make a general driving range claim." *Id.*; *see also id.* 81 Fed. Reg. at 36,227–36,228 (setting forth proposed 16 C.F.R. § 259.3(k) addressing driving range claims).

### B.   The Federal Regulatory Scheme Exempts From the MCPA the General Transaction or Conduct of Advertising Electric Driving Range

Based on the federal regulatory scheme applicable to fuel economy and driving range representations, the transaction or conduct alleged in this action, namely, the advertising and marketing of electric driving range, is "specifically authorized" conduct that is exempt from the MCPA as numerous Michigan courts have held under similar circumstances.  *See, e.g.*, *Flanagan v. Altria Group*, No. 05-71697, 2005 U.S. Dist. LEXIS 24644, at *22 (E.D. Mich. Oct. 25, 2005) (because the defendant's "'general transaction' was the labeling and advertising of its cigarettes," and because federal law "'establishes a comprehensive Federal program to deal with cigarette labeling and advertising,'" the defendant's conduct was exempt from the MCPA); *see also Short v. Janssen Pharm., Inc.*, No. 1:14-cv-

---

explain how conditions referred to in the advertisement differed from those under the EPA tests. Without this information, consumers are likely to confuse the claims with range estimates derived from the official EPA test procedures.")

13

1025, 2015 U.S. Dist. LEXIS 61123, at *13-14 (W.D. Mich. May 11, 2015) (in

action alleging unlawful marketing scheme against pharmaceuticals company,

holding that the defendant was exempt from the MCPA because the MCPA did not

apply to activities regulated by the FDA, regardless of whether the FDA did not

approve the marketing of drug to adolescents and instead refused the request);

*Kyles v. Keefe Commissary Network, LLC*, No. 14-cv-11907, 2015 U.S. Dist.

LEXIS 49152, at *16-18 (E.D. Mich. Mar. 24, 2015) ("To whatever extent Kyles is

alleging that Keefe Supply improperly manufactured its hot cocoa product, its

general conduct of producing and packaging food is explicitly authorized by

federal food regulations, and is thus also exempt from liability under the MCPA.")

In *Flanagan*, the plaintiff alleged that the defendant designed cigarettes to

dupe a machine that measured tar and nicotine content, and then, through use of

the descriptors "Lights" and "Lowered Tar and Nicotine," misled consumers about

the actual tar and nicotine content of the cigarettes. *Flanagan*, 2005 U.S. Dist.

LEXIS 24644, at *3. The plaintiff alleged this conduct violated the MCPA.  *Id.*

Although the FTC had not expressly permitted cigarette manufacturers to

use descriptors such as "low tar" and "lights," the *Flanagan* court nonetheless held

that the FTC impliedly authorized the defendant's conduct of using descriptors

such as "Lights" and "Lowered Tar and Nicotine" based on the pervasive federal

regulatory scheme involving the FTC's years-long enforcement of the appropriate

14

use of the tar and nicotine legend. *Id.* at *13. Among the authorities that the
*Flanagan* court identified as sources of federal implied authorization included two
opinions issued by the FTC and a 1966 letter from the FTC to the National
Association of Broadcasters, which provided guidance to manufacturers on the
permissible and impermissible use of representations regarding tar and nicotine
content. *Id.* at *14-18. The *Flanagan* court held that in light of the FTC regulatory
scheme impliedly authorizing the use of the "Lights" and "Lowered Tar and
Nicotine" descriptors, the Federal Cigarette Labeling and Advertising Act which
governed that very conduct, and the Michigan courts' liberal definition of
"specifically authorized" under the MCPA's exemption provision, the defendant's
alleged conduct fell outside the reach of the MCPA. *Id.* at *21-22.

As in *Flanagan*, for years, the EPA has regulated fuel economy disclosures
and the FTC has authorized the advertising of fuel economy estimates, consistent
with EPA requirements, as set forth in the FTC Guide. Indeed, one of the key
purposes of the FTC Guide is "to facilitate the ***use*** of fuel economy information in
advertising." *See* 76 Fed. Reg. 39,478, 39,518 (July 6, 2011) ("The [FTC] Guide,
adopted in 1975 . . . , provides guidance to automobile manufacturers to prevent
deceptive advertising and to facilitate the use of fuel economy information in
advertising.") As the FTC's recent Request for Public Comments makes clear, the
FTC continues to actively oversee, regulate, and provide guidance to advertisers

15

regarding fuel economy information including representations regarding the

electric driving range.  Given the FTC's long-standing regulatory guidance on fuel

economy advertising, and its express authorization to use fuel economy

information in advertising, Plaintiff's MCPA claim is barred as exempt under

MCL 445.904(1)(a) without regard to the legality of the content of the as-yet-to-be

specified driving range representations.  *See also Brett v. Toyota Motor Sales,*

*U.S.A., Inc.*, No. 08-1168, 2008 U.S. Dist. LEXIS 114462, at *22 (M.D. Fla. Sept.

15, 2008) (advertising the EPA's estimates and identifying the EPA as the source

of those estimates was specifically exempted from claims under the Florida

Deceptive and Unfair Trade Practices Act pursuant to Fla. Stat. § 501.212(1)

because the practice of advertising the fuel economy estimates provided by the

EPA was permitted by the rules and regulations of the FTC); *Godfrey v. Toyota*

*Motor North America, Inc.*, No. 07-5132, 2008 U.S. Dist. LEXIS 51762, at *7

(W.D. Ark. June 11, 2008) (in action alleging violation of the Arkansas Deceptive

Trade Practices Act ("ADTPA") based on use of EPA fuel economy estimates in

advertising, holding that ADTPA claim was exempted under Ark. Code Ann. § 4-

88-101(1) as "[a]dvertising or practices which are subject to and which comply

with any rule, order, or statute administered by the Federal Trade Commission";

and under Ark. Code Ann. § 4-88-101(3) as "[a]ctions or transactions permitted

16

under laws administered by ... [any] regulatory body or officer acting under statutory authority of this state or the United States...")

Insofar as Plaintiff's MCPA claim is based entirely on the "advertising and marketing" of the electric drive range of 2012 Prius Plug-In vehicles, no amendment could possibly cure this legal defect.  Accordingly, the MCPA claim should be dismissed without leave to amend.  *See Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (a complaint may be dismissed without leave to amend where the amendment would be futile) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   PLAINTIFF'S CLAIM FOR BREACH OF EXPRESS WARRANTY UNDER THE MICHIGAN UNIFORM COMMERCIAL CODE FAILS

Plaintiff alleges that TMS breached "certain express warranties" under the Michigan Uniform Commercial Code. *See* Am. Compl. ¶¶ 40-41. As discussed below, Plaintiff's express warranty claim must be dismissed because Plaintiff has failed to allege sufficient facts supporting the existence or breach of an express warranty and has failed to allege facts necessary to satisfy privity requirements.

### A.   Plaintiff Has Failed to Allege Sufficient Facts Supporting the Breach of An Express Warranty

"In an action for breach of express warranty, the court will not presume the existence of an express warranty, and the burden is on the plaintiff to prove that an express warranty exists." *Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 284

17

Mich. App. 617, 774 N.W.2d 332, 343 (2009) (citation omitted).  Under Michigan

law, express warranties by the seller are created as follows:

> (a) An affirmation of fact or promise made by the seller to the buyer which
> relates to the goods and becomes part of the basis of the bargain creates an
> express warranty that the goods shall conform to the affirmation or promise.
> (b) A description of the goods which is made part of the basis of the bargain
> creates an express warranty that the goods shall conform to the description.

MCL 440.2313(1)(a) & (b).  Thus, two prerequisites must be met to state a viable

express warranty claim:  (1) that the alleged statement constituted an "affirmation

of fact or promise" or a "description of the goods"; and (2) that the affirmation,

promise, or description was "part of the basis of the bargain."

The purported warranty that the 2012 Prius Plug-In "can operate in all-

electric mode for up to thirteen (13) miles on a full charge" does not constitute an

"affirmation of fact or promise" because the alleged statement does not state an

unequivocal fact or promise.  *See Shaffer v. AMF, Inc.*, 842 F.2d 893, 894-95, 899

(6th Cir. 1988) (statements in advertisement such as "when you're on it, there's

nothing bigger," "more than an incredible show of power," and "that's the kind of

ready-when-you-need-it benefit that's vital in the real world of Peterbilts,

Greyhounds and station wagon drivers who 'just don't see you'" were not promises

that a motorcycle rider would be "omnipotent and invisible" while riding).

But even if an "affirmation of fact or promise" or a "description of the

goods" were sufficiently alleged in the Complaint to constitute an express warranty

under Michigan law, Plaintiff alleges no facts for this Court to evaluate whether

any such representations were a "part of the basis of the bargain." "[I]n order for a

statement to constitute a part of the 'basis of the bargain,' that statement must have

been made when 'the bargain was still in process.'" *Mich. Dessert Corp. v. A.E.*

*Staley Mfg. Co.*, 23 Fed. Appx. 330, 334 (6th Cir. 2001) (citing *Autzen v. John C.*

*Taylor Lumber Sales, Inc.*, 280 Or. 783, 572 P.2d 1322, 1325 (Or. 1977)).

In *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416 (6th Cir. 1981),

where the Sixth Circuit considered a claim for breach of express warranty under

Ohio law, the Sixth Circuit explained that in evaluating whether statements are part

of the bargain of the parties, "the court should consider the circumstances

surrounding the transaction, the reasonableness of the buyer in believing the seller,

and the reliance placed on the seller's statements by the buyer." *Id.* at 422. Here,

other than a vague, inconsistent, and conclusory assertion that certain statements

were made "[p]rior to Plaintiff's purchase" on TMS' "website and through various

other marketing and advertising mediums," Plaintiff alleges no facts to enable the

Court to evaluate whether any such statements were made a part of the basis of the

bargain. Accordingly, Plaintiff's express warranty claim fails.

## B.    Plaintiff's Express Warranty Claim Also Fails for Lack of Privity

Putting aside Plaintiff's failure to plead the existence or breach of an express

warranty, Plaintiff's claim for breach of express warranty under Michigan law fails

19

on an independent ground – lack of privity.  Under Michigan law, an express

warranty may be created "only between a seller and a buyer, and any such express

warranty becomes a term of the contract itself." *Heritage Res. Inc.*, 774 N.W.2d at

342. "[W]here there is no contract, and therefore no 'bargain,' there can be no

express warranty under [MCL] 440.2313." *Id.*

Consequently, where, as here, a remote purchaser does not have a contract

with the manufacturer, then the manufacturer "could not have made any express

warranties directly to [the remote purchaser]." *Id.*; *see also id.* at 343 n.12 ("Our

research has revealed no modern case in which the [Michigan] Supreme Court has

ever held that privity of contract is unnecessary to enforce an express warranty.

Indeed, because an express warranty is a term of the contract itself, we conclude

that privity of contract is necessary for a remote purchaser to enforce a

manufacturer's express warranty."); *Montgomery v. Kraft Foods Global, Inc.*, 822

F.3d 304, 309 (6th Cir. 2016) (holding that because the plaintiff acknowledged that

she bought her Tassimo coffeemaker from a Fred Meijer grocery store and not

directly from defendants, the express warranty claim was properly dismissed for

lack of privity).

Here, Plaintiff alleges that he purchased his 2012 Prius Plug-In from Page

Toyota, *not* directly from the defendant.  Am. Compl. ¶ 13; Compl., Ex. A *thereto*.

Accordingly, Plaintiff's express warranty claim must be dismissed for lack of

privity.

## V.   PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE MICHIGAN UNIFORM COMMERCIAL CODE FAILS

Plaintiff pursues a claim for breach of the implied warranty of

merchantability under MCL 440.2314.  *See* Am. Compl. ¶ 39.  "Unless excluded or

modified . . . , a warranty that the goods shall be merchantable is implied in a

contract for their sale if the seller is a merchant with respect to goods of that kind."

MCL 440.2314(1).

MCL 440.2314(2) provides that goods are merchantable if they:

(a) pass without objection in the trade under the contract description; and
(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; and
(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) are adequately contained, packaged, and labeled as the agreement may require; and
(f) conform to the promises or affirmations of fact made on the container or label if any.

*Id.* § 440.2314(2).

To be "merchantable," a seller's product need not be "perfect."  *Storey*, 2016

U.S. Dist. LEXIS 72505, at *16 (citing *Computer Network, Inc. v. AM Gen. Corp.*,

265 Mich. App. 309, 696 N.W.2d 49, 56 (2005)); *Computer Network, Inc.*, 696

N.W.2d at 55 ("The warranty of merchantability requires that the goods sold be of

217029845

average quality within the industry.") (internal quotation marks omitted) (quoting *Guaranteed Constr. Co. v. Gold Bond Products*, 153 Mich. App. 385, 395 N.W.2d 332, 335 (1986)).

Plaintiff's claim for breach of the implied warranty of merchantability fails. Plaintiff alleges no facts to support his claim that the ability of his 2012 Prius Plug-In to travel 8 miles in "electric mode" through May of 2015, *see* Am. Compl. ¶ 15, and 10 miles in "electric mode" after May of 2015, *see id.* ¶ 16, renders his vehicle unfit for the ordinary purposes of providing transportation. Indeed, based on Plaintiff's allegations, it is evident that the alleged inability of his vehicle to travel up to 13 miles in "electric mode" did not impair the operability of his vehicle at all; rather, the vehicle was fully operable even when the vehicle was not in "electric mode" because "the car's gas engine [would] automatically and immediately" operate. *See id.* ¶ 18.

Given Plaintiff's failure to allege any facts supporting an inference that the operability of his vehicle was impacted when not in "electric mode," his claim for breach of the implied warranty of merchantability fails as a matter of law. *See Storey*, 2016 U.S. Dist. LEXIS 72505, at *18-21 (dismissing claim for breach of the implied warranty of merchantability where plaintiff's conclusory assertion that incontinence products resulted in an "increased . . . risk of adverse health consequences" was not supported by factual allegations suggesting that the alleged

22

increased risk was sufficiently serious enough to render the products unmerchantable); *Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013) (holding that complaint failed to state a plausible claim for breach of the implied warranty of merchantability where the allegedly inferior resin material used to construct gas tanks "did not implicate the Prius's operability"); *cf. Harnden v. Ford Motor Co.*, No. 04-72036, 2006 U.S. Dist. LEXIS 17942, at *15-17 & n.4 (E.D. Mich. Apr. 10, 2006) (evidence that a minor leak might still exist was insufficient to show chassis was not merchantable reasoning that merchantability is not a synonym for perfect); *Treadaway v. Damon Corp.*, No. 03-CV-72650, 2004 U.S. Dist. LEXIS 28762, at *21 (E.D. Mich. Sept. 30, 2004) (in the absence of evidence as to how the functioning of a motor home was impaired by a one-inch misalignment of the slide-out, claim for breach of an implied warranty of merchantability failed).

## VI.  PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT FAILS

Under Michigan law, the elements of a breach of contract claim are: "(1) the existence of a valid contract between the parties, (2) the terms of the contract requir[ing] performance of certain actions, (3) a party breached the contract, and (4) the breach caused the other party injury." *Keiper, LLC v. Intier Auto. Inc.*, 467 Fed. Appx. 452, 459 (6th Cir. 2012) (citing *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003)). Moreover, the "essential elements of a valid contract are (1) parties

competent to contract, (2) a proper subject matter, (3) a legal consideration, (4)

mutuality of agreements, and (5) mutuality of obligation." *Thomas v. Leja*, 187

Mich. App. 418, 468 N.W.2d 58, 60 (1991) (citation omitted).

Plaintiff alleges none of these essential facts and instead appears to rely on

his Retail Installment Sale Contract ("RISC") in support of his claim for breach of

contract against TMS. *See* Complaint (ECF No. 1) & Ex. A *thereto*; Am. Compl.

¶ 31.[6] However, the RISC is irrelevant to Plaintiff's contract claim because the

claim is not based on the RISC but rather on alleged representations in "advertising

and marketing." *See* Am. Compl. ¶ 32.

Moreover, TMS is *not* a party to the RISC.  *See* Complaint, Ex. A *thereto*

(ECF No. 1).  Therefore, as a matter of law, Plaintiff may not sue TMS for breach

of a contract to which it is not a party.  *See Reece v. Yeager Ford Sales, Inc.*, 184

S.E.2d 727, 731 (W. Va. 1971) ("As Ford, the manufacturer, was not the seller of

the automobile and was not a party to the contract of sale of the automobile by

Yeager to the plaintiff, the plaintiff is not entitled to rescission of the sale as

against Ford in this proceeding."); *cf. Herremans v. BMW of N. Am., LLC*, No. CV

14-02363, 2014 U.S. Dist. LEXIS 145957, at *17-18 (C.D. Cal. Oct. 3, 2014)

---

[6] Although Plaintiff's Retail Installment Sale Contract ("RISC") was attached to
the original complaint, Plaintiff failed to attach his RISC to the Am. Compl.  *See*
Complaint, Ex. A *thereto* (ECF No. 1); Am. Compl.  Accordingly, any reference to
the RISC is to Exhibit A attached to the original complaint filed in this action.  *See*
Complaint, Ex. A *thereto* (ECF No. 1).

217029845

(holding that alleged statements by independent dealer could not be attributed to manufacturer) (citing cases).

Other than the RISC (which cannot support a breach of contract claim against TMS), Plaintiff has failed to allege any written or oral contract with TMS, much less any of the other essential facts required under Michigan law to state a viable contract claim. *See Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 U.S. Dist. LEXIS 118613, at *15 (E.D. Mich. Aug. 26, 2014) (dismissing contract claim where the plaintiff failed to identify a contract that was breached).  Consequently, Plaintiff's claim for breach of contract in Count I must fail.

## <u>CONCLUSION</u>

For the reasons stated above, and as may be supplemented in a reply brief and any oral argument that may be presented, TMS requests that Plaintiff's claims be dismissed, and that the MCPA claim be dismissed with prejudice.

Dated: August 24, 2016                           Respectfully submitted,

MILLER CANFIELD                        SIDLEY AUSTIN LLP

s/ Leigh M. Schultz                         s/ Darlene M. Cho
Leigh M. Schultz (P71038)            Michael L. Mallow (admission pending)
Brian M. Schwartz (P69018)         Darlene M. Cho (251167)
150 West Jefferson, Suite 2500      555 West Fifth Street, Suite 4000
Detroit, Michigan 48226               Los Angeles, CA 90013
(313) 963-6420                            (213) 896-6000
schultzl@millercanfield.com         mmallow@sidley.com;
schwartzb@millercanfield.com      dcho@sidley.com

*Attorneys for Defendant Toyota Motor Sales, USA, Inc.*

25

217029845

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2016, I caused to be electronically filed

the foregoing papers with the Clerk of the Court using the ECF system, which will

send notification of such filing to the following:

Jan J. Rubinstein
Ryan P. Richardville
The Rubinstein Law Firm
30150 Telegraph Rd., Suite 444
Bingham Farms, MI 48025
(248) 220-1415
Email: jjrubinstein@yahoo.com

*Attorneys for Plaintiff*

s/ Darlene M. Cho
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
(213) 896-6000
dcho@sidley.com

217029845